IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **CITY OF LAREDO**<br><br>*Plaintiff,*<br><br>v.<br><br>The **UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO N. MAYORKAS,** Secretary of the United States Department of Homeland Security, in his official capacity; **U.S. CUSTOMS AND BORDER PROTECTION; TROY MILLER,** Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection, in his official capacity; **U.S. CUSTOMS AND BORDER PROTECTION OFFICE OF BORDER PATROL; RODNEY S. SCOTT,** Chief, United States Border Patrol, in his Official capacity;<br><br>*Defendants.* | Civil Case No. 21-CV-72 |

## PLAINTIFF CITY OF LAREDO'S COMPLAINT, EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION AND REQUEST FOR EMERGENCY HEARING ON TEMPORARY RESTRAINING ORDER

**TO THE HONORABLE JUDGE OF SAID COURT:**

1.  COMES NOW, Plaintiff CITY OF LAREDO ("Plaintiff" and/or "City") and hereby files its Complaint, Emergency Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction and Request for Emergency Hearing on Temporary Restraining Order against Defendants The UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO N. MAYORKAS, Secretary of the United States Department of Homeland Security, in his official

capacity; U.S. CUSTOMS AND BORDER PROTECTION; TROY MILLER, Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION OFFICE OF BORDER PATROL; RODNEY S. SCOTT, Chief, United States Border Patrol, in his official capacity (hereinafter collectively referred to as "Defendants"), and in support thereof would respectfully show the Court as follows:

## I.     PARTIES

2. Plaintiff City of Laredo is a home-rule municipal corporation, incorporated and operating under the laws of the State of Texas.

3. Defendants are appointed officials of the United States government, United States governmental agencies responsible for the implementation of the challenged issue, and the United States.

4. Defendant the United States of America is sued under 5 U.S.C. sections 702–703 and 28 U.S.C. section 1346.

5. Defendant the United States Department of Homeland Security ("DHS") oversees U.S. Customs and Border Protection ("CBP") and U.S. Customs and Border Protection Office of Border Patrol, ("BP" and/or "Border Patrol").

6. Defendant Alejandro N. Mayorkas is the Secretary of the United States Department of Homeland Security. He is responsible for the administrative actions taken in relation to the apprehension and transport of Refugees, Immigrants, and/or Migrants (RIMs). He is sued in his official capacity only.

7. Defendant Troy Miller is the Senior Official Performing the Duties of the Commissioner of CBP. He is responsible for the administrative actions taken in relation to the

apprehension and transport of Refugees, Immigrants, and/or Migrants (RIMs). He is sued in his official capacity only.

8. Defendant Rodney S. Scott is the Chief of the Customs and Border Protection Office of the Border Patrol. He is responsible for the administrative actions taken in relation to the apprehension and transport of Refugees, Immigrants, and/or Migrants (RIMs). He is sued in his official capacity.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1346, 1361 and 5 U.S.C. sections 702–703.

10. The Court is authorized to award the requested injunctive relief under 5 U.S.C. section 706, 28 U.S.C. section 1361, and 28 U.S.C. sections 2201–2202.

11. Venue lies in this district pursuant to 28 U.S.C. section 1391 because the City of Laredo is a resident of this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

12. Refugees, Immigrants, and/or Migrants (RIMs) travel through the southern border of Texas every day. Many of which who cross legally through the Ports of Entry and are tested for COVID-19 before allowed entry into the United States, while many cross the southern border illegally and, consequently, are not tested for COVID-19 prior to their entry. Accordingly, Defendants, and particularly Border Patrol, apprehends these individuals, processes them, and manages their release while they await court proceedings.

13. While many apprehensions occur at our own border in Laredo, many other apprehensions occur in other areas including the Rio Grande Valley (RGV) and the City of Del

Rio. As Defendants continue to process the overflow of RIMs apprehended in the RGV and Del Rio, they have been transporting RIMs into the City of Laredo for release from detention every day. The City was recently advised that Border Patrol will double the number of RIMs brought to Laredo to manage the current overflow in the RGV. *See Exhibit 1.* That is, increasing numbers from three (3) bus loads to six (6) bus loads daily, minimally between 250 to 350 people per day. Of importance, these numbers don't include those RIMs who have actually been detained at the Laredo border, which on average amounts to approximately 25 to 35 per day, making matters to address the ever-growing RIM population at our own Border progressively worse.

14. Not every apprehended person is tested for COVID-19 as part of Defendants' processing procedure before they are legally released from immigration custody and into the general public. Therefore, many, if not most, go untested and risk spreading the disease to other RIMs in their group and the general public after their release.

15. Defendants release these individuals in Laredo, many of which are cared for and serviced by local shelters/entities, Holding Institute and Catholic Charities, also referred to as non-government agencies (NGO's). However, only those who arrive at the NGO's are tested for COVID-19 and treated accordingly in an effort to stop the spread of the deadly virus. This leaves those RIMs who either choose not to go to the shelters or do not qualify to be housed at the shelters to be released into the general public—local bus stations, the airport, etc.—without having been tested for COVID-19 and potentially exposing others to the risk of infection.

16. Furthermore, recent calculations reveal that the COVID-19 positive detections among these RIMs has jumped significantly, up to 40% increase in some groups. *See Exhibit 2.* From June 1st through July 9th there was a noticeable increment of positive cases, as 305 RIMs were reported COVID-19 positive. As of July 11, 2021, there were 139 confirmed active COVID-

19 cases in the City, of which 63 were detainees/RIMs. *See Exhibit 3.* Of particular concern is that COVID-19 variant tests have back positive in the community, some of which were RIM individuals who required to be hospitalized locally. *See Exhibit 3*. The COVID-19 variant requires a longer time for testing which places an additional strain on the NGO's capacity to house and accommodate them for proper treatment and quarantine further necessitating the halt of additional RIMs being brought to the City.

17. Holding Institute is operating as a COVID-19 positive quarantine shelter by testing, vaccinating and housing RIMs, and the Frontera shelter, operated by Catholic Charities, is operating to care for non-positive COVID-19 RIMs. However, further complicating matters, on Friday, July 9, 2021, Holding Institute shelter was quarantined by the City of Laredo Medical Authority (LHA) as a desperate attempt to try and prevent the positive RIMs from infecting the community as the RIMs were apparently walking in the local streets and shopping areas. It is to remain under quarantine for at least the next week to ensure those COVID positive persons complete their isolation period.

18. These two NGO's had been managing and coping within the limits of their financial and personnel resources by expanding locations to provide housing, medical care, and accommodations to all RIMs until July 9, 2021 when the City of Laredo, through federal funds was obligated to step in to assist. Although the City of Laredo can temporarily continue to provide funding through federal funds, the imminent issue at stake is the immediate lack of logistics for obtaining additional operational space and the lack of new and willing employees to recruit to assist.

19. This past week 172 positive RIM persons were identified, placing a significant strain on the shelters to provide basic necessities such as food, water, clothing, toiletries and

medical supplies for persons that must remain at their facility for 10 days in isolation, as per CDC, to prevent further spread of infection. Additionally, with the increasing RIM volume of positives, these persons can complicate or become severe and may require admission to our local hospitals.

20.     The ultimately concerning matter is that the City of Laredo is designated as a medically underserved area (MUA) and Health Professionals Shortage Area as designated by the Health Resources and Services Administration (HRSA). The pandemic amplified this issue, with local hospitals experiencing a depletion of medical staff, no pediatric Intensive Care Unit (ICU), and with very limited bed and adult ICU capacity to accept COVID-19 patients, if at all. Our weakened medical infrastructure is not sufficiently equipped to immediately accommodate the health of our own citizens, and most certainly cannot handle the additional stress of dozens of RIM admissions to our local hospitals.

21.     The urgency of this matter is that the NGO's are at full capacity and unable to accept additional RIMs. Therefore, if the flow of RIMs to Laredo is not stopped all of those RIMs who are brought to the City will be released from immigration custody (approximately 300 people per day) without being tested when they may be infected with COVID 19 or at the very least have likely been exposed to COVID-19. These RIMs will be dropped off into the general public, at local bus stations, and at the Laredo International Airport—unknowingly exposing the community and fellow citizens to this deadly virus during their travels all over the country.

22.     Furthermore, U.S. Health Law Section 265 of Title 42 ("Title 42") is a public health order established by the Centers for Disease Control and Prevention (CDC) during the onset of the coronavirus pandemic, and was implemented by the Trump administration back in March 2020 which essentially prohibits the introduction of individuals into the United States when the CDC Director believes that there is serious danger of the introduction of a

communicable disease into the United States. 42 U.S.C. § 265. The newly implemented policy allowed CBP officials to expel migrants encountered at the U.S-Mexico border instead of holding them in detention facilities to avoid the spread of the virus. It has been reported that President Biden is considering ending the use of the Title 42 expulsion order in the very near future.

## SUMMARY OF THE ARGUMENT

23. Although the increased influx of RIMs is clearly a federal issue, the federal government has made this a municipal problem to resolve on our own. As Laredo is an underserved medical community with limited resources, it simply cannot accommodate a surge in COVID-19 positives. The City cannot accept any more buses of RIMs as the flood of RIMs has caused irreparable harm and injury to our community given little to no hospital availability. The situation is imminent as the shelters are at full capacity and it has become impossible to perform and provide reasonable care to RIMs. The City seeks to ensure the health and safety of the community as well as the RIMs, and the rest of the country during their travels. Furthermore, the end of Title 42 would have serious ramifications as our health care system would not be able to handle any additional influx.

24. Therefore, the City requests that Defendants cease transporting RIMs to the City of Laredo until the time that our local shelters have capacity to provide housing and proper accommodations.

## LEGAL STANDARD

25. The City of Laredo seeks a temporary restraining order and preliminary injunction for the purpose "of preserving the status quo and preventing [the] irreparable harm" that will occur if Defendants continue to transport buses full of RIMs into the City of Laredo. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.,*

415 U.S. 423, 439 (1974).

26. To merit such relief, the City, as the moving party, must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury to the moving party; (3) the threatened injury outweighs any damages the injunction may cause defendant; and (4) the injunction is in the public interest. *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014); *Mayo Found. for Med. Educ. & Research v. BP Am. Prod. Co.*, 2:20-CV-34-Z, 2020 WL 759212, at *2 (N.D. Tex. Feb. 14, 2020) (applying same standard to temporary restraining order that governs preliminary injunction analysis).

27. "None of [these] four requirements has a fixed quantitative value." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 582 (E.D. La. 2016) (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). Instead, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* Thus, in applying the four-part test, the Court must conduct "a delicate balancing," which weighs "the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief." *Id.* Ultimately, whether to grant a request for a temporary restraining order "is left to the sound discretion" of the Court. *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020).

## ARGUMENT

**I. The City is Likely to Prevail on the Merits of Its Claims**

28. The City can show that there is concrete, particularized, actual imminent and irreparable injury that is clearly traceable to the actions of the federal government agencies (CBP, BP, and ICE) by their transport of RIMs into the City. The City hereby incorporates the facts

identified in the Factual Background section above as incorporated by reference herein as if fully. Based on the aforementioned facts above, the City is likely to succeed on the merits because the City can show particularly that the health and safety dangers that the continued influx of RIMs into the City pose in regards to COVID-19.

29. Texas Government Code Section 418.108(f) provides, "The county judge or the mayor of a municipality may order the evacuation of all or part of the population from a stricken or threatened area under the jurisdiction and authority of the county judge or mayor if the county judge or mayor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery", and Section 418.108(g) states, "The county judge or the mayor of a municipality may control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy of premises in that area. Tex. Gov't Code § 418.108(f) and (g).

30. Accordingly, due to the influx of RIMs that Defendants continue to transport into Laredo, Webb County, Texas, Webb County Judge Tano Tijerina intends to use his authority pursuant to Section 418.108(f) and (g) to tackle the health and safety concerns posed to the Laredo, Webb County area as an effort to preserve life and ensure that the disaster mitigation, response, and recovery efforts are not lost during such time that the area has been declared as Disaster Area. *See Exhibit 4.*

### A. Standard for Assessing Likelihood of Success

31. "As long as the court cannot say there is no likelihood of prevailing on the merits but finds the factor of substantial likelihood of success present to some degree, then the party seeking the injunction has met its burden." *Family Rehab., Inc. v. Azar*, 3:17-cv-3008, 2018 WL 3155911, at *3 (N.D. Tex. June 28, 2018) (citing *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood*

*Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980)).

32. Temporary relief is not appropriate "if there is no chance that the movant will eventually prevail on the merits." *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). But "one appealing to the conscience of the chancellor to maintain the status quo . . . , although he carries a burden, is not required to prove to a moral certainty that his is the only correct position." *Id.* That the movant "is unable, in an abbreviated proceeding, to prove with certainty eventual success does not foreclose the possibility that temporary restraint may be appropriate." *Id.*; *see also* 7C Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 2948.3 (3d ed.) ("All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning.").

33. "A preliminary injunction may issue . . . despite the existence of a plausible defense, as long as the movant demonstrates a substantial likelihood of success." *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979).

**II. The City of Laredo will Suffer Irreparable Harm if an Injunction is not Granted**

34. "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). Instead, "[t]he plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Id.* (footnote omitted).

35. The City makes that showing because the continued transport of RIMs into the City for release into the general public will irreparably harm the City given little to no hospital availability. The City has limited resources as it is an underserved medical community, with a shortage of doctors and nurses available to treat those infected with COVID-19. The situation is

imminent as the shelters are at full capacity and will be unable to test and perform and provide reasonable care to additional COVID-19 positive RIMs. The City of Laredo is at a tipping point because of failure to receive timely resources to enforce Washington's changed border policies.

36. Moreover, in the event that the President lifts the Title 42 order within the time that our NGO's are under quarantine and are at full capacity, it would be a logistical nightmare for the City as it would be unable to tackle the health and safety risks posed by the influx. Our health care system (or lack thereof) would not be able to serve the medical needs of the people living in our community in addition to the RIMs.

### III.   A TRO Would Not Harm Defendants or the Public

37. Defendants face no harm from a TRO. But even if Defendants had a legitimate interest for their continued transport of RIMs to the City, they face no substantial prejudice from doing so. "A temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Foreman v. Dallas County*, 193 F.3d 314, 323 (5th Cir. 1999), *abrogated on other grounds*, *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015). The remedy the City seeks is merely to stop the transfer or at the least significantly reduce the number of RIMs brought over until our local shelters have capacity to accommodate them. Any hurdles associated with the federal government ceasing transporting RIMs to the City and/or testing RIMs for this deadly virus should certainly be outweighed by the federal government's interest in not only protecting Laredoans, but the people living in this country, including the RIMs who have traveled to the US, and due to the Government's protocols, can legally be released until their due process can be had in a court of law.

### IV.   An Injunction is in the Public Interest

38. Issuance of a temporary restraining order and subsequent preliminary injunction by this Court is in the public interest as the health and safety of the City and the country is at stake. The release of people who are COVID-19 positive and/or have been exposed to someone who is COVID-19 positive poses a danger that this City and country have endeavored to remedy since the inception of this pandemic. Unfortunately, the federal government has left this public health concern to be tackled by our local government with no consideration of the City's little to no resources nor regard for the deadly ramifications it could have on the country.

39. An easy solution exists to tackle this public health and safety matter—the federal government agencies can transfer RIM overflow to other venues further north that are more logistically prepared and properly medically served to provide adequate accommodations to these people. Venues that are prepared to provide proper food, shelter, COVID-19 testing, isolating if COVID-19 positive or variants, vaccinating, medically treating, and transporting same to bus stations or airports after their release from immigration custody. This not only would ensure proper humanitarian care of RIMs who are now in our county, but ensure the protection of *all* people who come in contact with them—U.S. citizens, and non-citizens—from the risk of getting infected with this deadly disease.

## PRAYER FOR RELIEF

40. For the foregoing reasons, Plaintiff CITY OF LAREDO respectfully prays that the Court have **an emergency hearing on the City's request for Temporary Restraining Order and enter an Emergency Temporary Restraining Order enjoining Defendants from transporting RIMs to the City of Laredo until the time that our local shelters have capacity to provide housing and proper accommodations for them**, issue preliminary and permanent injunctive relief regarding same, and award such other further relief as the Court deems equitable

and just.

Dated: July 16, 2021

Respectfully Submitted,

/s/ Alyssa J. Castillon
**ALYSSA J. CASTILLON**
Assistant City Attorney, City of Laredo
*Attorney in Charge*
Texas State Bar No.: 24064568
Southern District of Texas Bar No.: 3114327
City of Laredo Office of the City Attorney
1110 Houston Street
Laredo, Texas 78040
Telephone: (956) 791-7319
Facsimile: (956) 791-7494
Email: acastillon@ci.laredo.tx.us

/s/ Kristina K. Laurel Hale
**KRISTINA K. LAUREL HALE**
Texas State Bar No.: 24001044
*Special Counsel appearing Pro Hace Vice*
City of Laredo City Manager's Office
1110 Houston Street
Laredo, Texas 78040
Telephone: (956) 791-7319
Facsimile: (956) 791-7494
Email: khale@ci.laredo.tx.us

*Counsel for the City of Laredo*

## CERTIFICATE OF SERVICE

      I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 16, 2021. A true and accurate copy of the foregoing document was also sent to the following email addresses:

ogcexecsec@hq.dhs.gov;
ogc@hq.dhs.gov;
david.palmer@hq.dhs.gov;
stephen.mccleary@hq.dhs.gov;
sharmistha.das@hq.dhs.gov;
cbpserviceintake@cbp.dhs.gov;
Robert.E.perez@cbp.DHS.gov; and
USATXS.CivilNotice@usdoj.gov

And sent via certified mail to:

Civil Process Clerk
United States Attorney's Office
1000 Louisiana Ste 2300
Houston, TX 77002

Office of the General Counsel
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave, SE
Washington, DC 20528-0485

Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, Suite 4.4-B
Washington, D.C. 20229

/s/ Alyssa J. Castillon
ALYSSA J. CASTILLON

## CERTIFICATE OF CONFERENCE

I certify that, on July 16, 2021, I attempted to confer with Defendants about the substance of this application and their availability for a hearing on this matter by emailing the following addresses:

ogcexecsec@hq.dhs.gov;
ogc@hq.dhs.gov;
david.palmer@hq.dhs.gov;
stephen.mccleary@hq.dhs.gov;
sharmistha.das@hq.dhs.gov;
cbpserviceintake@cbp.dhs.gov;
Robert.E.perez@cbp.DHS.gov; and
USATXS.CivilNotice@usdoj.gov

/s/ Alyssa J. Castillon
ALYSSA J. CASTILLON

## VERIFICATION

STATE OF TEXAS     §
                   §
COUNTY OF WEBB     §

BEFORE ME, the undersigned notary public on this day personally appeared, **City of Laredo Fire Chief and Emergency Management Coordinator Guillermo Heard,** who, being sworn, stated under oath that he has read Plaintiff City of Laredo's Complaint, Verified Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (the "Complaint"), and that the factual allegations contained therein are within his personal knowledge and are true and correct.

_____
**Guillermo Heard**

SWORN TO AND SUBSCRIBED before me on the 14th day of July, 2021 by Guillermo Heard.

_____
Cynthia Ruiz
Notary Public in and for the State of Texas
My Commission Expires: July 19, 2022

CYNTHIA LAURA RUIZ
My Notary ID # 131648804
Expires July 19, 2022

## VERIFICATION

STATE OF TEXAS §
§
COUNTY OF WEBB §

BEFORE ME, the undersigned notary public on this day personally appeared, **City of Laredo Local Health Authority Dr. Victor Trevino,** who, being sworn, stated under oath that he has read Plaintiff City of Laredo's Complaint, Verified Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (the "Complaint"), and that the factual allegations contained therein are within his personal knowledge and are true and correct.

_____
Dr. Victor Trevino

SWORN TO AND SUBSCRIBED before me on the 14th day of July, 2021 by City of Laredo Local Health Authority Dr. Victor Trevino.

_____
Cynthia Ruiz
Notary Public in and for the State of Texas
My Commission Expires: July 19, 2022

CYNTHIA LAURA RUIZ
My Notary ID # 131648804
Expires July 19, 2022